IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JOHN R. SANNER                                                                PLAINTIFF

v.                      Civil No. 05-1081

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                       DEFENDANT

## **MEMORANDUM OPINION**

**Factual and Procedural Background:**

Plaintiff, John Sanner, appeals from the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying his application for disability insurance benefits (hereinafter "DIB"), and supplemental security income benefits (hereinafter "SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i)* and *423,* and § 1602 of Title XVI, *42 U.S.C. § 1381a,* respectively. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

The history of the administrative proceedings is contained in the appeal briefs and the ALJ's decision, and will not be recounted here except as necessary. However, it is noted that plaintiff seeks benefits for a closed period, only, beginning October 31, 2002 and ending in July, 2004. For purposes of his DIB application, he alleged an onset date of October 31, 2002 (T. 57). The application was denied initially and on reconsideration. Plaintiff requested an administrative hearing, which request was granted and the hearing was conducted on May 16, 2005 (T. 174-188). On July 21, 2005, the ALJ issued an unfavorable decision (T. 11-15). The

Appeals Council declined the plaintiff's request for review of the hearing decision, by Order dated August 24 2005 (T. 3-5).

Plaintiff was 23 years of age at the time of the administrative hearing (T. 184), and has an eleventh grade formal education, with one special education class, and a Graduate Equivalency Diploma (T. 175, 182, 89, 124). He has past relevant work as a truck driver, assembly line packer and, in the military as a gunner/driver (T. 97, 101, 176). Plaintiff asserts disability due to: personality disorder; depression; anxiety; mood swings; inability to concentrate/attention deficit disorder.

The Appeals Council's denial of the plaintiff's Request for Review of the hearing decision rendered it the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision. See *42 U.S.C. § 405(g)*. The parties have each filed an appeal brief (Doc. #6 & 7), and this matter is now ready for consideration.

**Applicable Law:**

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir.2002)*. Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir.2003)*. As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari, 258 F.3d 742, 747 (8th*

*Cir.2001)*. In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir.2000)*.

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability which can be expected to result in death or which has lasted or can be expected to last for at twelve consecutive months, and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A)*.

The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *42 U.S.C. § § 423(d)(3), 1382c(3)(c)*. A plaintiff must show that his disability, not simply his impairment, has lasted or can be expected to last for at least twelve consecutive months. Further, the plaintiff has the burden of showing that he is not able to perform his past relevant work. *Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir.1994)*. Thus, the plaintiff has a responsibility to present the strongest case possible. See *Thompson v. Sullivan, 928 F.2d 255, 260 (8th Cir.1991)*.

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 404.1520(b)*. If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id., § 404.1520(c);* see *20 C.F.R. § 404.1526.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 404.1520(d).* If so, benefits are awarded; if not, the evaluation continues.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 404.1520(e).* If so, benefits are denied; if not, the evaluation continues.

Step 5 involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id., § 404.1520(f).* If so, benefits are denied; if not, benefits are awarded.

It is also noted that whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e).* In the instant case, the ALJ concluded that plaintiff did not have any medically determinable mental health impairment.

Moreover, the court's review is not simply "a rubber stamp for the [Commissioner's] decision and involves more than a search for evidence supporting the [Commissioner's]

AO72A
(Rev. 8/82)

findings." *Tome v. Schweiker, 724 F.2d 711, 713 (8th Cir.1984)*. Indeed, "[t]o determine whether existing evidence is substantial, '[the court] must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it.' " *Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir.1999)* (quoting *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993))*. In addition, the court's review of the decision must include a determination as to whether the proper legal standards were applied. *See Nettles v. Schweiker, 714 F.2d 833, 835-36 (8th Cir.1983)*. Thus, this court's review is both limited and deferential to the agency. See *Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir.1996)*.

Further, the ALJ may discredit subjective complaints which are inconsistent with the record as a whole. *Ownbey v. Shalala*, *5 F.3d 342, 344 (8th Cir.1993)*. The law on this issue is clear. Under *Polaski v. Heckler*, *739 F.2d 1320, 1321-22 (8th Cir.1984),* "an ALJ must look at five factors when determining the credibility of a claimant's subjective allegations of pain: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir.1995); see also Baker v. Sec. of HHS, 955 F.2d 552, 555 (8th Cir.1992)*.

The absence of an objective medical basis which supports the subjective complaints of pain is just one factor to be considered in evaluating the credibility of a plaintiff's subjective complaints of pain. *Polaski v Heckler, 751 F.2d 943, 948 (8th Cir.1984); see also, Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir.1995)*. The ALJ must "discuss" these factors in the hearing decision. *Herbert v. Heckler*, *783 F.2d 128, 131 (8th Cir.1986)(citing Polaski v. Heckler, 751 F.2d 943, 948-950 (8th Cir.1984))*. Consideration must also be given

-5-

to all the evidence presented related to the claimant's prior work history, and the observations of non-medical third parties, as well as treating and examining physicians related to the above matters. *20 C.F.R. § 416.929; Social Security Ruling 96-7p; Polaski v. Heckler, 751 F.2d 943 (8th Cir.1984)*(subsequent history omitted).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, *739 F.2d at 1322*.

To determine whether the ALJ properly applied the factors listed in *Polaski*, we must determine whether the ALJ took into account all the relevant evidence, and whether that evidence contradicted the claimant's own testimony so that the ALJ could discount the testimony for lack of credibility. *Benskin v. Bowen*, *830 F.2d 878, 882 (8th Cir.1987)*. The ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, *862 F.2d 176, 179 (8th Cir.1988)*.

Implicit in the ALJ's task of making a credibility determination is the requirement that he "discuss" the *Polaski* factors. *Herbert v. Heckler*, *783 F.2d at 130* (the *Polaski* cases and the Social Security Disability Reform Act of 1984 require that the Commissioner set forth the inconsistencies in the objective medical evidence presented and discuss the factors set forth in the *Polaski* settlement when making "credibility" determinations concerning claimant's subjective complaints of pain).

In summary, the ALJ must discuss and point out the inconsistencies in the record, in order to make a credibility determination. *Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir.1991)*

("it is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski* when making credibility determinations"); *Herbert v. Heckler*, *783 F.2d at 131* (even though evidence with respect to *Polaski* factors is in the record, those factors must be discussed in the decision).

"Nonexertional limitations are limitations other than on strength but which nonetheless reduce an individual's ability to work." *Asher v. Bowen, 837 F.2d 825, 827 n. 2 (8th Cir.1988).* Examples include "mental, sensory, or skin impairments, as well as impairments which result in postural and manipulative limitations or environmental restrictions." *Id.; See 20 C.F.R., Pt. 404, Subpart P, Appendix 2, §§ 200.00(e).*

Residual functional capacity is what a plaintiff can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the plaintiff's description of his limitations. *Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir.2001);* see also, *Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995); 20 C.F.R. §§ 416.945(a).*

When a plaintiff suffers from exertional and nonexertional impairments, as asserted here, and the exertional impairments alone do not warrant a finding of disability, the ALJ must consider the extent to which the nonexertional impairments further diminish the plaintiff's work capacity. *Thompson v. Bowen, 850 F.2d 346, 349 (8th Cir.1988).* If the claimant's characteristics do not differ significantly from those contemplated in the Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled or not disabled. *Id.* That is to say, "an ALJ may use the Guidelines even though there is a

-7-

nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." *Id. at 349-50.* The United States Court of Appeals for the Eighth Circuit has explained as follows:

> In this context, "significant" refers to whether the claimant's nonexertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. Under this standard isolated occurrences will not preclude the use of the Guidelines, however persistent nonexertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines will preclude the use of the Guidelines to direct a conclusion of disabled or not disabled.

*Id. at 350.* See also, *Holz v. Apfel, 191 F.3d 945, 947 (8th Cir.1999); Foreman v. Callahan, 122 F.3d 24, 26 (8th Cir.1997); Lucy v. Chater, 113 F.3d 905, 908 (8th Cir.1997).*

**Discussion:**

At the outset, it should be noted that a closed period of disability is at issue, herein. Plaintiff asserts that he is entitled to a period of disability from October 31, 2002 "until the Plaintiff went back to work in July, 2004." (Doc. #6, p. 18).

As the United States Court of Appeals for the Eighth Circuit has made clear, disability is not an "all-or-nothing" proposition; an applicant may be entitled to benefits for one portion of a benefit claim period but not another. See *Lubinski v. Sullivan 952 F.2d 214, 219 (8th Cir. 1991),* citing *Van Horn v. Heckler, 717 F.2d 1196, 1200 (8th Cir.1983);* see also *Atkinson v. Bowen, 864 F.2d 67, 71 (8th Cir.1988).* The Commissioner frequently has awarded such a "closed period" disability benefit. See*, e.g., Ness v. Sullivan, 904 F.2d 432, 434-35 (8th Cir.1990)* (Secretary awarded closed period award; case remanded to determine if closed period

should be extended); *Woods v. Bowen,)*854 F.2d 288, 290 (8th Cir.1988) (modifying closed period award).

In his written decision, the ALJ found that the plaintiff met the disability insured status requirements of the Act for DIB at the time of his onset date, continued to meet them until June 30, 2004, and has not engaged in substantial gainful activity since the alleged onset date of October 31, 2002 (T. 14). The ALJ next determined that the plaintiff has alleged experiencing depression and mood disorders, but that these impairments do not meet or medically one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Plaintiff's allegations regarding his limitations "are not borne out by the overall record nor found to be totally credible." (T. 15) The ALJ found that the plaintiff had no exertional, postural or manipulative limitation, and retained the residual functional capacity (hereinafter "RFC"), to perform, as follows:

> Non-exertionally, he is able to perform work where interpersonal contact is incidental to the work performed; complexity of tasks is learned and performed by rote with few variables, and requiring little judgment; and required supervision is simple, direct, and concrete.

(T. 15).

According to the testimony of the vocational expert (hereinafter "VE"), plaintiff was unable to perform his past relevant work as a truck driver, but could perform works as a "home packer "(more than 1600 statewide and 136, 000 nationwide positions)." Accordingly, the ALJ found that the plaintiff was under no disability at any time through the date of the decision (T. 15).

At the outset, the undersigned notes that the plaintiff has simply not met his burden of

proving he was disabled for a closed period of time. He was self-referred to the South Arkansas Regional Health Center on June 13, 2002, for depression related to his military service. The plaintiff served in the Army National Guard. According to his reported history:

> John started the military after the 11th grade. The summer after the 11th grade he went into the National Guard for basic training. John finished high school and went back into active duty. He came home from Bosnia in October of 2001. He married on May 10, 2002. John has to go to drill each month. He signed on for six years guard duty with additional three years of some form of duty. John related that he gets real upset thinking about the idea of leaving his new bride. He would like medication to help him cope with the stress he feels when faced with the prospect of going back into active duty.
>
> * * *
>
> *l. Military History:* John enlisted the summer after the 11th grade. He has been in Bosnia. He came home from Bosnia in October of 2001. John expressed his extreme displeasure with still being involved with the military. He regrets his current military status to the point of weeping at night thinking about leaving his wife and being deployed back over seas.
>
> * * *
>
> c. *Emotional Functioning:* John presented with minimal symptoms of anxiety and minimal symptoms of depression as indicated by the BAI and the BDI-PC, respectively. The depression he feels seems directly tied to his military service.

(T. 138-139). Plaintiff was diagnosed with Adjustment Disorder with Depressed Mood it was noted "[o]ther than the frustration, anxiety and depression associated with his military service, John appears to be doing well. He was scheduled to come back in for individual therapy session in two weeks. He was also scheduled to see a staff psychiatrist for possible psychotropic meds." (T. 140-141).

Thus, the plaintiff was seen by Dr. Shailesh Vora, who prescribed Paxil and one-to-one therapy. Plaintiff experienced a sexual side effect from the Paxil, thus Effexor and Desyrel

AO72A
(Rev. 8/82)

were prescribed (T. 137). When seen by a licensed psychological examiner on June 27, 2002, plaintiff's goal was stated to be "to either get out of the military or to feel better about the military if he stays in it." (T. 136). By July 25, 2002, plaintiff reported he was both sleeping and feeling better, and he felt that the medicine was "working well." (T. 136).

On August 15, 2002, plaintiff had no suicidal/homicidal ideation, or psychotic features, according to Dr. Vora. He did continue to have the sexual side effect, for which Dr. Vora recommended Viagra. On September 12, 2002, Dr. Vora noted that plaintiff's insight and judgment were good. On January 9, 2003, the depression was still present, but insight and judgment remained good (T. 134). Dr. Vora reported on February 21, 2003 that plaintiff was experiencing "some depression", but again, insight and judgment were good (T. 134).

Plaintiff saw his counselor on August 15, 2002, who noted:

> We looked at the results of the MMPI-2.[1] John readily agreed with what the results indicated, other than trying to present himself as being unrealistically virtuous. John would like to keep coming to individual therapy even though he feels that he current adjustment is adequate. We looked at using the traditional technique of free association. The next time that John comes in which will be in about one month, he will do most of the talking and the undersigned will sit back and let him say whatever is on his mind.

(T. 133). Plaintiff cancelled his next two appointments with the counselor, and then took possession of his records from him on October 31, 2002 (T. 133).

Plaintiff was seen again on April 28, 2003, by Dr. Vora, who reported the following:

> Collateral with grandmother, Betty Franks. Betty Franks came in and mentioned to me that John Sanner's childhood was not normal. He received mental abuse, he was put down by his parents. Betty is John's paternal grandmother. Betty also mentioned that John was diagnosed with ADD. He still has a problem focusing, and he is fidgety. Sometimes he gets very impulsive and does not

---

[1] The MMPI-2 results are not a part of this administrative record.

think of the consequences. With the medication, he is doing better. He would
like to talk to Rodney Goodwin, PsyD, about changing counselors. Betty claims
John is taking his medication as prescribed.

(T. 130). On May 8, 2003, Dr. Vora found plaintiff was "not doing well" and was depressed. He prescribed Remeron, which caused side effects. Thus, on June 12, 2203, Remeron was discontinued and Effexor was restarted. At that time, plaintiff's mood and affect, sleep, appetite and energy were all better. Plaintiff's doctor reported the medications were helping (T. 130).

Ms. Erin Shaffer, LCSW, began seeing the plaintiff in May of 2003, because he requested a female therapist. On November 4, 2003, Ms. Shaffer reported:

> He has been seen since May for three therapy sessions. During each of these sessions, he has indicated that he has problems with depression and impulsivity. Typically, John is very quiet during these sessions and he is resistant to providing information without prompting. He does indicate that there is a history of family problems relating to his biological parents, but has been unwilling to discuss these. he seems to lack insight into his condition and has refused to address some of the problems which have been identified as being primary stressors. He has been seen by Dr. Shailesh Vora for medication checks but compliance is a bit questionable. He tends to have difficulty tolerating medications due to physical side effects, resulting in his not taking them.
>
> John's current diagnosis is Adjustment Disorder with Depressed Mood. However, it appears that he is showing more signs of a long-term Mood Disorder. Further contact with John could help us clarify this as well as testing through such means as an MMPI.
>
> Dr. Shailesh Vora is John's assigned psychiatrist at our facility. John was seen for regular appointments for a period of time but was scheduled to return on October 6, 2003, and did not show up for that appointment. As of yet, he has not rescheduled that appointment.

(T. 129). The record does not contain any further evidence of mental health treatment. It is uncontested that plaintiff returned to full time work as a truck driver in July of 2004, working

-12-

50-80 hours per week (T. 177). Plaintiff also testified that he stopped taking his medication in "March or May of '04" because he started feeling better gradually each day and he just stopped taking it (T. 179). He also acknowledged he suffered from no physical impairments (T. 179). Thus, based on the foregoing, we find that substantial evidence does not support a finding that plaintiff demonstrated he suffered from a disability during the closed period beginning October 31, 2002 and ending July, 2004.

Further, though not specifically raised by the plaintiff, we note that the ALJ considered plaintiff's subjective allegations and nonexertional limitations pursuant to the criteria set forth in *Polaski*, and found that they lacked credibility (T. 12-14). The ALJ sets forth and discusses his perceived inconsistencies of record with specificity (T. 13-14) The undersigned agrees with the ALJ's conclusion, and finds that the ALJ's credibility determination is supported by substantial evidence of record (T. 105-106, 86-90). "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir.1992),* quoting *Gooch v. Secretary of H.H.S., 833 F.2d 589, 592 (6th Cir.1987), cert. denied, 484 U.S. 1075 (1988).*

The ALJ determined that during the relevant time period, the plaintiff retained the RFC to perform work at any exertional level, and where the interpersonal contact is incidental to the work performed; complexity of tasks is learned and performed by rote with few variables, and required little judgment; and, required supervision is simple, direct and concrete. Again, the Court finds substantial evidence of record supports the ALJ determination.

The hypothetical question posed to the VE properly included all impairments that were supported by substantial evidence, and excluded plaintiff's other alleged impairments, which

the ALJ had sufficient reason to discredit, based upon our consideration of the record. See *Stout v. Shalala, 988 F.2d 853, 855 (8th Cir.1993); Rappaport v. Sullivan, 942 F.2d 1320, 1323 (8th Cir.1991)*. The testimony of a VE in response to a properly phrased hypothetical question may provide substantial evidence to support an ALJ's determination. *Goose v. Apfel, 238 F.3d 981 (8th Cir.2001)*.

**Conclusion:**

Accordingly, the undersigned finds that the decision of the ALJ, denying benefits to the plaintiff for the period of time beginning October 31, 2002 and ending in July, 2004, is supported by substantial evidence of record and should be affirmed. Further, the Court finds that the plaintiff's Complaint should be dismissed with prejudice.

ENTERED this 13th day of July, 2006.

    /s/ Bobby E. Shepherd
    HONORABLE BOBBY E. SHEPHERD
    UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)